IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

PHOTOMEDEX, INC., RADIANCY, INC.,
and PHOTOMEDEX TECHNOLOGY, INC.,

                        Plaintiffs,                  Civil Action No.: 1:16-cv-03981

v.

DS HEALTHCARE GROUP, INC.,

                        Defendant.

_____/

**DEFENDANT DS HEALTHCARE GROUP, INC.'S
ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

       Defendant DS Healthcare Group, Inc. ("DSKX") by and through its undersigned attorneys, answers the Complaint of Plaintiffs PhotoMedex, Inc. ("PHMD"), Radiancy, Inc. ("Radiancy"), and Photomedex Technology, Inc. ("P-Tech") (collectively, "Plaintiffs") as follows:

       1.      DSKX admits the allegations contained in paragraph 1 of the Complaint.

       2.      DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 2 of the Complaint and therefore denies the same.

       3.      DSKX admits the allegations contained in paragraph 3 of the Complaint.

       4.      DSKX admits the allegations contained in paragraph 4 of the Complaint.

       5.      DSKX admits that Plaintiffs' Complaint purports to refer to Plaintiffs collectively as "PHMD Group" or "Plaintiffs."

       6.      DSKX admits that it is incorporated under the laws of the State of Florida. DSKX denies that it is headquartered in Deerfield Beach, Florida and states that DSKX is headquartered

in Pompano Beach, Florida.  DSKX states that it is not currently "publicly-traded," but admits that it has been "publicly-traded" historically.

7.      DSKX admits that, among other things, it develops topical pharmaceutical and personal care products.  To the extent paragraph 7 of the Complaint contains additional allegations, DSKX denies them.

8.      DSKX admits the allegations contained in paragraph 8 of the Complaint.

9.      DSKX admits the allegations contained in paragraph 9 of the Complaint.

10.     DSKX admits that Merger Sub A and Merger Sub B are shell companies without operations that were formed in connection with the transactions contemplated by the Merger Agreements.

11.     DSKX admits the allegations contained in paragraph 11 of the Complaint.

12.     DSKX admits the allegations contained in paragraph 12 of the Complaint for jurisdictional purposes only.

13.     Paragraph 13 of the Complaint contains a legal conclusion to which a response is not required.  To the extent a response is required, DSKX admits that it conducts business in the State of New York, and that Exhibit A and Exhibit B to the Complaint state that venue shall lay in this Court.  To the extent paragraph 13 contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

14.     Paragraph 14 of the Complaint contains a legal conclusion to which a response is not required.  To the extent a response is required, DSKX admits that Exhibit A and Exhibit B to the Complaint state that venue shall lay in this Court.

15.     Paragraph 15 of the Complaint contains a legal conclusion to which a response is not required.  To the extent a response is required, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

16.     DSKX admits that it entered into certain agreements with PHMD on or about February 19, 2016, and that those certain agreements speak for themselves.  To the extent that paragraph 16 of the Complaint contains allegations that are inconsistent with the terms of the referenced agreements, DSKX denies those allegations.  To the extent paragraph 16 contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

17.     DSKX admits the existence of two "merger agreements" and states that those agreements speak for themselves as to the terms of the contemplated transactions.  To the extent that paragraph 17 of the Complaint contains allegations that are inconsistent with the terms of the referenced "merger agreements," DSKX denies those allegations.  To the extent paragraph 17 contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

18.     DSKX admits the existence of a document titled "Agreement and Plan of Merger and Reorganization" and states that it speaks for itself.  To the extent that paragraph 18 of the Complaint contains allegations that are inconsistent with the terms of the referenced "Agreement and Plan of Merger and Reorganization," DSKX denies those allegations.  To the extent paragraph 18 contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

19.     DSKX admits the allegations contained in paragraph 19 of the Complaint.

20.     DSKX admits that PHMD, P-Tech, DSKX and Merger Sub B purported to enter into an agreement titled "Agreement and Plan of Merger and Reorganization," and states that it speaks for itself.  To the extent that paragraph 20 of the Complaint contains allegations that are inconsistent with the terms of the referenced "Agreement and Plan of Merger and Reorganization," DSKX denies those allegations.  To the extent paragraph 20 contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

21.     DSKX admits the allegations contained in paragraph 21 of the Complaint.

22.     DSKX states that a response does not appear to be required to the allegations stated in paragraph 22 of the Complaint.  To the extent paragraph 22 contains allegations to which a response is required, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

23.     DSKX admits that Sections 2.12 of both Merger Agreements contain the text quoted in paragraph 23 of the Complaint.  To the extent that paragraph 23 contains allegations that are inconsistent with the terms of the referenced "Merger Agreements," DSKX denies those allegations.  To the extent paragraph 23 contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

24.     DSKX admits that the Merger Agreements contain representations and warranties, and that the Merger Agreements provide that all parties thereto materially induced each other to execute the Merger Agreements and to contemplate consummating the Mergers.  To the extent that paragraph 24 of the Complaint contains allegations that are inconsistent with the terms of the

4

referenced "Merger Agreements," DSKX denies those allegations. To the extent paragraph 24 contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

25.     DSKX admits that the representations and warranties outlined in Sections 4.3, 4.4, 4.5, 4.6, 4.8, 4.9, 4.22, and 4.23 of the Radiancy Merger Agreement speak for themselves. Additionally, DSKX admits that the representations and warranties outlined in Sections 4.3, 4.4, 4.5, 4.6, 4.8, 4.9, 4.22, and 4.23 of the P-Tech Merger Agreement speak for themselves. To the extent that paragraph 25 of the Complaint contains allegations that are inconsistent with the terms of the Radiancy Merger Agreement and the terms of the P-Tech Merger Agreement, DSKX denies those allegations. To the extent that paragraph 25 of the Complaint contains additional allegations, DSKX denies those remaining allegations.

26.     DSKX admits that the covenants outlined in Sections 5.9(g), 5.12, and 5.16 of the Radiancy Merger Agreement speak for themselves. Additionally, DSKX admits that the covenants outlined in Sections 5.9, 5.12, and 5.16 of the P-Tech Merger Agreement speak for themselves. To the extent that paragraph 26 of the Complaint contains allegations that are inconsistent with the terms of the Radiancy Merger Agreement and the terms of the P-Tech Merger Agreement, DSKX denies those allegations. To the extent that paragraph 26 of the Complaint contains additional allegations, DSKX denies those remaining allegations.

27.     DSKX admits that provisions pertaining to termination of the Radiancy Merger Agreement are outlined in Section 8.1(d)(i) of the Radiancy Merger Agreement, which speak for themselves, and that provisions pertaining to termination of the P-Tech Merger Agreement are outlined in Section 8.1 of the P-Tech Merger Agreement, which speak for themselves. To the extent that paragraph 27 of the Complaint contains allegations that are inconsistent with the

terms of the Radiancy Merger Agreement and the terms of the P-Tech Merger Agreement, DSKX denies those allegations. To the extent that paragraph 27 of the Complaint contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

28.     DSKX admits that provisions pertaining to termination of the Radiancy Merger Agreement are outlined in Section 8.1(b)(iv) of the Radiancy Merger Agreement, which speak for themselves, and that provisions pertaining to termination of the P-Tech Merger Agreement are outlined in Section 8.1 of the P-Tech Merger Agreement, which speak for themselves.  To the extent that paragraph 28 of the Complaint contains allegations that are inconsistent with the terms of the Radiancy Merger Agreement and the terms of the P-Tech Merger Agreement, DSKX denies those allegations. To the extent that paragraph 28 of the Complaint contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

29.     DSKX admits that provisions pertaining to payment of a "termination fee" are outlined in Section 8.3(d) of the Radiancy Merger Agreement, not Section 8.1(d)(i) of the Radiancy Merger Agreement.  Additionally, DSKX admits that provisions pertaining to payment of a "termination fee from DSKX" are outlined in Section 8.3 of the P-Tech Merger Agreement, not Section 8.1 of the P-Tech Merger Agreement.  To the extent that paragraph 29 of the Complaint contains allegations that are inconsistent with the terms of the Radiancy Merger Agreement and the terms of the P-Tech Merger Agreement, DSKX denies those allegations. To the extent that paragraph 29 of the Complaint contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

30.     DSKX admits that Section 1.1 of the Radiancy Merger Agreement defines the term "DSKX Triggering Event." To the extent that paragraph 30 of the Complaint contains allegations that are inconsistent with the terms of the Radiancy Merger Agreement, DSKX denies those allegations. To the extent that paragraph 30 of the Complaint contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

31.     DSKX admits that the provisions of Section 5.9(g) of the Radiancy Merger Agreement speak for themselves. To the extent that paragraph 31 of the Complaint contains allegations that are inconsistent with the terms of the Radiancy Merger Agreement, DSKX denies those allegations. To the extent that paragraph 31 of the Complaint contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

32.     DSKX admits that the provisions of Section 8.1(b)(iv) and Section 8.3(e) of the Radiancy Merger Agreement speak for themselves. To the extent that paragraph 32 of the Complaint contains allegations that are inconsistent with the terms of the Radiancy Merger Agreement, DSKX denies those allegations. To the extent that paragraph 32 of the Complaint contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

33.     DSKX admits that the provisions of Section 8.1 of the P-Tech Merger Agreement and Section 8.1 of the Radiancy Merger Agreement speak for themselves. To the extent that paragraph 33 of the Complaint contains allegations that are inconsistent with the terms of the P-Tech Merger Agreement and with the terms of the Radiancy Merger Agreement, DSKX denies those allegations. To the extent that paragraph 33 of the Complaint contains additional

allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

34.     DSKX admits that the provisions of Section 8.2(b) of the P-Tech Merger Agreement speak for themselves. To the extent that paragraph 34 of the Complaint contains allegations that are inconsistent with the terms of the P-Tech Merger Agreement, DSKX denies those allegations. To the extent that paragraph 34 of the Complaint contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

35.     DSKX admits that the terms of Section 8.2(a) of the Radiancy Merger Agreement speak for themselves. Additionally, DSKX admits that the terms of Section 8.2(b) of the P-Tech Merger Agreement speak for themselves. To the extent that paragraph 35 of the Complaint contains allegations that are inconsistent with the terms of the Radiancy Merger Agreement and the terms of the P-Tech Merger Agreement, DSKX denies those allegations. To the extent that paragraph 35 of the Complaint contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

36.     DSKX admits that the terms of Section 8.2(b) and Section 8.3 of the Radiancy Merger Agreement speak for themselves. Additionally, DSKX admits that the terms of Section 8.2(c) and Section 8.3 of the P-Tech Merger Agreement speak for themselves. To the extent that paragraph 36 of the Complaint contains allegations that are inconsistent with the terms of the Radiancy Merger Agreement and the terms of the P-Tech Merger Agreement, DSKX denies those allegations. To the extent that paragraph 36 of the Complaint contains additional

allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

37.     DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 37 of the Complaint and therefore denies the same.

38.     DSKX admits that there was a purported Form 8-K filing dated March 23, 2016, and states that the filing speaks for itself.  Otherwise, DSKX denies the allegations contained in paragraph 38 of the Complaint.

39.     DSKX admits that the purported Form 8-K filing dated March 23, 2016 speaks for itself.  DSKX denies the remaining allegations contained in paragraph 39 of the Complaint.

40.     DSKX admits the allegations contained in paragraph 40 of the Complaint.

41.     DSKX admits that the purported Form 8-K filing dated March 23, 2016, speaks for itself.  DSKX denies the remaining allegations contained in paragraph 41 of the Complaint.

42.     DSKX admits that the purported Form 8-K filing dated March 23, 2016 speaks for itself.  DSKX denies the remaining allegations contained in paragraph 42 of the Complaint.

43.     DSKX admits that the purported Form 8-K filing dated March 23, 2016 speaks for itself.  DSKX denies the remaining allegations contained in paragraph 43 of the Complaint.

44.     DSKX admits that Daniel Khesin has been and currently is the President of DSKX and a member and the Chairman of the Board of Directors of DSKX.  However, paragraph 44 of the Complaint is vague as to the time referenced.  Accordingly, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

45.     DSKX admits that the purported Form 8-K filing dated March 23, 2016 speaks for itself.  DSKX denies the remaining allegations contained in paragraph 45 of the Complaint.

46.     DSKX admits that certain of its former directors purported to terminate Khesin's employment as President and as an employee, and that those same former directors purported to remove Khesin as Chairman and a member of the DSKX Board of Directors.  DSKX denies the remaining allegations contained in paragraph 46 of the Complaint.

47.     DSKX admits that there was a purported Form 8-K filing dated March 23, 2016, and states that the document speaks for itself.  To the extent that paragraph 47 contains additional allegations, DSKX denies them.

48.     DSKX admits that there was a purported Form 8-K filing dated March 28, 2016, and states that the document speaks for itself.  DSKX denies the remaining allegations contained in paragraph 48 of the Complaint.

49.     DSKX admits the allegations contained in paragraph 49 of the Complaint.

50.     DSKX admits the allegations contained in paragraph 50 of the Complaint.

51.     DSKX admits that there was a purported Form 8-K filing dated March 28, 2016, and states that the document speaks for itself.  DSKX denies the remaining allegations contained in paragraph 51 of the Complaint.

52.     DSKX admits that there was a purported Form 8-K filing dated March 28, 2016, and states that the document speaks for itself.  To the extent that paragraph 52 contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

53.     DSKX admits that certain of its former directors and officers purported to issue a press release dated April 3, 2016.  DSKX denies that the press release referenced in paragraph 53 of the Complaint was authorized by DSKX or issued on its behalf.  DSKX denies the remaining allegations contained in paragraph 53 of the Complaint.

54.     DSKX admits that Exhibit E to the Complaint purports to be a Form 8-K dated April 4, 2016 that includes the unauthorized April 3, 2016 press release issued by certain former directors and officers of DSKX.  DSKX denies that either document contained in Exhibit E to the Complaint was issued or authorized by DSKX.  To the extent that paragraph 54 contains additional allegations, DSKX denies them.

55.     DSKX admits that Exhibit E to the Complaint includes the language quoted in paragraph 55 of the Complaint.  DSKX denies that it stated the language contained in paragraph 55 of the Complaint.  To the extent that paragraph 55 contains additional allegations, DSKX denies them.

56.     DSKX admits that Exhibit E to the Complaint includes the language quoted in paragraph 56 of the Complaint.  DSKX denies that it stated the language contained in paragraph 56 of the Complaint.  To the extent that paragraph 56 contains additional allegations, DSKX denies them.

57.     DSKX admits that Exhibit E to the Complaint includes the language quoted in paragraph 57 of the Complaint.  DSKX denies that it stated the language contained in paragraph 57 of the Complaint.  To the extent that paragraph 57 contains additional allegations, DSKX denies them.

58.     DSKX admits the SEC commenced an investigation sometime after the unauthorized issuance of the April 3, 2016 press release included in Exhibit E.  DSKX denies the remaining allegations contained in paragraph 58 of the Complaint.

59.     DSKX admits that the unauthorized April 3, 2016 press release purports to describe how Khesin obtained voting agreements that allowed him to obtain 56.5% of DSKX's voting shares.  To the extent that paragraph 59 contains additional allegations, DSKX is without

knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

60.     DSKX admits that certain former members of the DSKX Board of Directors were removed from the DSKX Board of Directors by valid exercise of the voting rights of a majority of DSKX's voting shares.   DSKX admits that its current independent directors were subsequently appointed.   DSKX denies that its current directors (other than Khesin himself, obviously) are or were "friendly to [Khesin's] position."   To the extent that paragraph 60 contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

61.     DSKX states that the unauthorized press release dated April 3, 2016 issued by certain of DSKX's former directors and officers speaks for itself.   DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 61 of the Complaint and therefore denies the same.

62.     DSKX admits that the April 15, 2016 order issued by the United States District Court for the Southern District of Florida includes the language quoted in paragraph 62 of the Complaint.   DSKX admits that the Court "found that Khesin had not acted unlawfully in obtaining the voting agreements and had the authority to dismiss the former members of the board of directors and appoint new ones."

63.     DSKX admits that, on April 20, 2016, DSKX was notified by Nasdaq that because DSKX had not yet filed its Annual Report on Form 10-K for the year ended December 31, 2015, DSKX no longer qualified for continued listing in accordance with Nasdaq Rule 5250(c)(1).  To the extent paragraph 63 to the Complaint includes additional allegations, DSKX

is without knowledge or information sufficient to form a belief as to the truth or falsity of the those allegations and therefore denies the same.

64.     DSKX admits the allegations contained in paragraph 64 of the Complaint.

65.     DSKX admits that it made an announcement via the filing of a Form 8-K, dated May 6, 2016, and states that the document speaks for itself.  To the extent that paragraph 65 of the Complaint contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those allegations and therefore denies the same.

66.     DSKX admits the allegations contained in paragraph 66 of the Complaint.

67.     DSKX denies the allegations contained in paragraph 67 of the Complaint.

68.     DSKX denies the allegations contained in paragraph 68 of the Complaint.

69.     DSKX denies the allegations contained in paragraph 69 of the Complaint.

70.     DSKX admits that the current price of its stock is lower than the average share price of a share of DSKX stock on February 19, 2016.  DSKX denies the remaining allegations contained in paragraph 70 of the Complaint.

71.     DSKX admits that former members of its Board of Directors who voted in favor of the transaction are no longer affiliated with DSKX following their removal by exercise of the voting power of a majority of DSKX's voting shares.  DSKX denies that any representations by Khesin constituted a "material reason for the transaction."   DSKX admits that the SEC is conducting an investigation into certain matters relating to DSKX.  DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 71 of the Complaint and therefore denies the same.

72.     DSKX denies the allegations contained in paragraph 72 of the Complaint.

73.     DSKX admits its stock cannot currently be traded on the Nasdaq.  To the extent that paragraph 73 of the Complaint contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those allegations and therefore denies the same.

74.     DSKX admits Nasdaq advised DSKX on April 20, 2016 that DSKX no longer qualified for active listing on Nasdaq.  DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 74 of the Complaint and therefore denies the same.

75.     DSKX denies the allegations contained in paragraph 75 of the Complaint.

76.     DSKX admits that the SEC is in the process of investigating DSKX and Khesin.

77.     DSKX admits the allegations contained in paragraph 77 of the Complaint.

78.     DSKX admits that there are pending class actions against DSKX and states that the complaints filed in those lawsuits include certain allegations regarding DSKX and Khesin. To the extent that paragraph 78 of the Complaint contains additional allegations, DSKX denies them.

79.     DSKX denies the allegations contained in paragraph 79 of the Complaint.

80.     DSKX denies the allegations contained in paragraph 80 of the Complaint.

81.     DSKX denies the allegations contained in paragraph 81 of the Complaint.

82.     DSKX denies that it materially breached Section 5.9(g) of the Radiancy Merger Agreement by any of the conduct alleged in paragraph 82 of the Complaint.

   a)   DSKX states that the April 2, 2016, press release, which is not attached to the Complaint as an exhibit, speaks for itself.  DSKX denies that its former board members and former counsel had authority to engage in the conduct alleged in

paragraph 82(a) of the Complaint, and further denies that their conduct is attributable to DSKX. Additionally, DSKX states the transaction described in paragraph 82(a) of the Complaint was neither authorized nor consummated. To the extent that paragraph 82(a) of the Complaint contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those allegations and therefore denies the same.

b) DSKX denies that it "offered to sell shares of its stock at $0.75 per share," or otherwise sold or transferred DSKX shares at that price following execution of the Merger Agreements, as alleged in paragraph 82(b) of the Complaint. DSKX admits that it received an inquiry from an existing investor regarding the acquisition of additional shares of DSKX stock, and that DSKX notified PHMD of that inquiry and discussed the matter with PHMD, consistent with the requirements of the Merger Agreements. To the extent paragraph 82(b) to the Complaint includes additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of the those allegations and therefore denies the same.

83.	DSKX denies the allegations contained in paragraph 83 of the Complaint.

84.	Paragraph 84 of the Complaint contains a legal conclusion to which no response is required. To the extent a response is required to paragraph 84, DSKX states that the terms of the Merger Agreements speak for themselves. To the extent that paragraph 84 of the Complaint contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

85. DSKX denies the allegations contained in paragraph 85 of the Complaint.

86. DSKX admits that it received the April 12, 2016 letter attached to the Complaint as Exhibit H. DSKX denies the remaining allegations contained in paragraph 86 of the Complaint.

87. DSKX admits the allegations contained in paragraph 87 of the Complaint.

88. DSKX admits receipt of a letter dated April 12, 2016, purporting to identify alleged breaches of the Merger Agreements by DSKX. DSKX denies the remaining allegations contained in paragraph 88 of the Complaint.

89. DSKX denies the allegations contained in paragraph 89 of the Complaint.

90. DSKX admits that Plaintiffs purported to notify DSKX of their intention to seek to recover the DSKX Termination Fee, but denies that Plaintiffs are entitled to the DSKX Termination Fee.

91. DSKX states the Radiancy Merger Agreement speaks for itself. DSKX denies that Plaintiffs are entitled to payment of the DSKX Termination Free. To the extent that paragraph 91 of the Complaint contains additional allegations, DSKX denies them.

92. DSKX denies the allegations contained in paragraph 92 of the Complaint.

93. Paragraph 93 of the Complaint contains a legal conclusion to which no response is required. To the extent that paragraph 93 of the Complaint contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

94. DSKX denies the allegations contained in paragraph 94 of the Complaint.

95. DSKX denies the allegations contained in paragraph 95 of the Complaint.

96. DSKX denies the allegations contained in paragraph 96 of the Complaint.

97.     DSKX denies that PHMD was "working with DSKX in what it believed was good faith."  DSKX admits that its counsel sent a letter dated May 25, 2016 to PHMD, which letter outlined PHMD's breaches of the Merger Agreements.

98.     DSKX denies the allegations contained in paragraph 98 of the Complaint.

99.     DSKX denies the allegations contained in paragraph 99 of the Complaint.

100.     DSKX denies Plaintiffs acted in good faith.  DSKX admits that Plaintiffs breached the Merger Agreements and that DSKX has maintained that position.

101.     DSKX admits Plaintiffs sent a letter dated May 27, 2016 that purported to terminate the Merger Agreements.  DSKX denies that Plaintiffs validly terminated the Merger Agreements, and denies the remaining allegations contained in paragraph 101 of the Complaint.

102.     DSKX admits the allegations contained in paragraph 102 of the Complaint.

103.     DSKX admits DSKX Stockholder Approval was not yet obtained at the time Plaintiffs sent their letter dated May 27, 2016.  DSKX denies Plaintiffs validly terminated the Merger Agreements.  DSKX denies the remaining allegations contained in paragraph 103 of the Complaint.

104.     DSKX denies the allegations contained in paragraph 104 of the Complaint.

105.     DSKX admits that Plaintiffs informed DSKX of Plaintiffs' position that they were entitled to payment of the DSKX Termination Fee.  DSKX denies that Plaintiffs are entitled to payment of the DSKX Termination Fee.  DSKX denies that a DSKX Triggering Event has occurred.  DSKX denies the remaining allegations contained in paragraph 105 of the Complaint.

106.     Paragraph 106 of the Complaint states a legal conclusion to which a response is not required.  To the extent a response is required, DSKX admits the allegations contained in paragraph 106.

107.    DSKX admits that Plaintiffs' Complaint states it is seeking a declaratory judgment and for damages for breach of contract.  DSKX denies that Plaintiffs are entitled to the relief sought in their Complaint.  To the extent that paragraph 107 of the Complaint contains additional allegations, DSKX is without knowledge or information sufficient to form a belief as to the truth or falsity of those remaining allegations and therefore denies the same.

**COUNT I**
**REQUEST FOR DECLARATORY JUDGMENT**

108.    DSKX incorporates by reference paragraphs 1 through 107 above as thought set forth fully herein.

109.    Paragraph 109 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, DSKX admits the allegations contained in paragraph 109 of the Complaint.

110.    DSKX denies the allegations contained in paragraph 110 of the Complaint.

111.    DSKX denies the allegations contained in paragraph 111 of the Complaint.

112.    DSKX denies the allegations contained in paragraph 112 of the Complaint.

113.    DSKX denies the allegations contained in paragraph 113 of the Complaint.

114.    DSKX admits the allegations contained in paragraph 114 of the Complaint.

115.    Paragraph 115 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, DSKX admits the allegations contained in paragraph 115 of the Complaint.

116.    DSKX admits the allegations contained in paragraph 116 of the Complaint.

117.    DSKX admits this Court has jurisdiction to determine the issues set forth in paragraph 117 of the Complaint, but denies that Plaintiffs are entitled to have the Court declare

that Plaintiffs validly terminated the Merger Agreements, that DSKX is liable for payment of the DSKX Termination Fee to Plaintiffs, or that DSKX is liable for payment of the DSKX Expense Reimbursement.

WHEREFORE, this Court should enter judgment in favor of DSKX and against Plaintiffs on Count I of the Complaint, and determine and declare:

(a) Plaintiffs did not properly terminate the Merger Agreements pursuant to Section 8.1(b)(iv) of the Radiancy Merger Agreement and Sections 8.1 and 8.2(b) of the P-Tech Merger Agreement;

(b) DSKX is not liable to Plaintiffs for the DSKX Termination Fee;

(c) Plaintiffs did not properly terminate the Merger Agreements pursuant to Section 8.1(d)(i) of the Radiancy Merger Agreement and Sections 8.1 and 8.2(b) of the P-Tech Merger Agreement;

(d) DSKX is not liable to Plaintiffs for the DSKX Expense Reimbursement; and

(e) Such other relief in favor of DSKX as the Court deems appropriate.

## COUNT II
## BREACH OF CONTRACT

118.    DSKX incorporates by reference paragraphs 1 through 117 above as though set forth fully herein.

119.    Paragraph 119 of the Complaint states a legal conclusion to which no response is required.   To the extent a response is required, DSKX states that the terms of the Merger Agreements speak for themselves.

120.    DSKX denies the allegations contained in paragraph 120 of the Complaint.

121.    DSKX denies the allegations contained in paragraph 121 of the Complaint.

122.   DSKX denies the allegations contained in paragraph 122 of the Complaint.

123.   DSKX admits that it refused to pay the DSKX Termination Fee to Plaintiffs because Plaintiffs are not entitled to payment of the DSKX Termination Fee.  DSKX denies that it breached the Merger Agreements.  DSKX denies the remaining allegations contained in paragraph 123 of the Complaint.

124.   DSKX admits that it has not paid the DSKX Expense Reimbursement to Plaintiffs because Plaintiffs are not entitled to payment of the DSKX Expense Reimbursement.  DSKX denies the remaining allegations contained in paragraph 124 of the Complaint.

125.   Paragraph 125 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, DSKX states that the terms of the Merger Agreements speak for themselves, and DSKX denies that it has an obligation to pay either the DSKX Termination Fee or the DSKX Expense Reimbursement.

126.   DSKX denies the allegations contained in paragraph 126 of the Complaint.

WHEREFORE, this Court should enter judgment in favor of DSKX and against Plaintiffs on Count II of the Complaint, and award such other relief in favor of DSKX as the Court deems appropriate.

127.   DSKX denies each and every allegation in the Complaint not specifically admitted herein and denies that Plaintiffs are entitled to the relief requested in the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to the damages sought in their Complaint because Plaintiffs cannot establish that they fully performed their obligations under the Merger Agreements.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' recovery is barred by their failure to satisfy conditions precedent under the Merger Agreements.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claimed damages, if any, were caused, in whole or in part, by the conduct, actions, omissions, delay or failure to act of third parties not under the control of DSKX.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claimed damages, if any, were caused, in whole or in part, by their own conduct, actions, omissions, delay or failure to act.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of estoppel.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because the Merger Agreements are voidable due to Plaintiffs' misrepresentations, including but not limited to PHMD's misrepresentation in a February 22, 2016 press release that "PhotoMedex shareholders will own approximately 43% of the company and DS Healthcare shareholders will own approximately 57%" as a result of the transactions contemplated by the Merger Agreements.

## SEVENTH AFFIRMATIVE DEFENSE

DSKX has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses available.  DSKX therefore reserves the right to assert additional affirmative defenses in the event discovery indicates that they may be appropriate.

# COUNTERCLAIMS

## INTRODUCTION

Facing slowing sales and multi-million dollar lawsuits, PhotoMedex, Inc., Radiancy, Inc. and Photomedex Technology, Inc. (collectively, the "PHMD Parties") desperately sought to force a merger with DS Healthcare Group, Inc. ("DSKX"), despite the PHMD Parties' own inability to meet the conditions to close under the merger agreements. After failing to persuade DSKX to ignore their glaring problems and proceed with the merger, the PHMD Parties decided to use DSKX's refusal as a pretext to try and obtain the capital infusion they so desperately needed. Specifically, after DSKX notified the PHMD Parties of their breaches of the merger agreements and consequent inability to complete the merger, the PHMD Parties promptly purported to terminate the agreements and demand that DSKX pay a $3 million breakup fee. But under the plain terms of the merger agreements, DSKX has no obligation to pay the PHMD Parties the ransom they demanded. Moreover, the PHMD Parties' breaches of their own obligations under the merger agreements have caused DSKX to suffer damages for which the PHMD Parties are liable.

## THE PARTIES

1.      Defendant-Counterclaimant DS Healthcare Group, Inc. ("DSKX") is a company incorporated under the laws of the State of Florida with its principal place of business located in Pompano Beach, Florida.

2.      Plaintiff-Counterclaim Defendant PhotoMedex, Inc. ("PHMD") is a company incorporated under the laws of the State of Nevada with its principal place of business in Horsham, Pennsylvania.

3.      Plaintiff-Counterclaim Defendant Radiancy, Inc. ("Radiancy") is a wholly-owned, directly or indirectly, subsidiary of PHMD organized under the laws of the state of Delaware with its principal place of business in Orangeburg, New York.

4.      Plaintiff-Counterclaim Defendant Photomedex Technology, Inc. ("P-Tech") is a wholly-owned subsidiary of PHMD organized under the laws of the state of Delaware with its principal place of business in Horsham, Pennsylvania.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

6.      This Court has personal jurisdiction over the PHMD Parties because they regularly conduct business in New York, and because they consented to the jurisdiction of this Court in Section 9.5 of the Merger Agreements, defined *infra*.

7.      Venue is appropriate because the parties agreed in Section 9.5 of the Merger Agreements, defined *infra*, that venue would lie exclusively in this Court.

## THE MERGER AGREEMENTS

8.      On or about February 19, 2016, DSKX entered into two merger agreements with certain of the PHMD Parties.

9.      Specifically, DSKX, PHMD, Radiancy, and PHMD Consumer Acquisition Corp. ("Merger Sub A") entered into an Agreement and Plan of Merger and Reorganization ("Radiancy Merger Agreement"), pursuant to which Radiancy would merge with and into Merger Sub A, with Radiancy remaining as the surviving entity after the merger.

10.     A true and correct copy of the Radiancy Merger Agreement is attached hereto as Exhibit A.  *See also* Plaintiffs' Complaint as Exhibit A [ECF No. 1-1].

11.     In addition, DSKX, PHMD, P-Tech, and PHMD Professional Acquisition Corp. ("Merger Sub B") entered into an Agreement and Plan of Merger and Reorganization ("P-Tech Merger Agreement," and together with the Radiancy Merger Agreement, the "Merger Agreements"), pursuant to which P-Tech would merge with and into Merger Sub B, with P-Tech remaining as the surviving entity after the merger.

12.     A true and correct copy of the P-Tech Merger Agreement is attached hereto as Exhibit B.  *See also* Plaintiffs' Complaint as Exhibit B [ECF No. 1-2].

13.     All capitalized terms not otherwise defined herein have the meanings given in the Merger Agreements.

14.     Section 2.12 of both Merger Agreements outlines conditions necessary to Closing on the respective merger transactions.

15.     Among other things, Section 2.12 in the Radiancy Merger Agreement requires the following as a "Condition to Closing":

> (h) Legal Requirements.  Neither the Radiancy Group, PHMD nor DSKX shall be the subject of any legal proceedings, investigations, proceedings or prohibition by any Governmental Authority, or other litigation that … (B) could reasonably be expected to have a Material Adverse Effect, [or] (C) would cause any Party to breach any material representation, warranty or covenant under this Agreement and the Exhibits hereto…

16.     The Radiancy Merger Agreement provides that the term "Material Adverse Effect" means, among other things:

> a material adverse effect on (i) the assets, liabilities, results of operations or condition (financial or otherwise) or prospects of the Radiancy Business of the Radiancy Group (when taken as a consolidated whole), or (ii) the ability of any

member of the Radiancy Group to perform their material obligations hereunder or to consummate the transactions contemplated hereby…

*See* ECF No. 1-1 at 9.

17.     Likewise, among other things, Section 2.12 in the P-Tech Merger Agreement requires the following as a "Condition to Closing":

(h) Legal Requirements.  Neither the Radiancy Group, PHMD nor DSKX shall be the subject of any legal proceedings, investigations, proceedings or prohibition by any Governmental Authority, or other litigation that … (B) could reasonably be expected to have a Material Adverse Effect, [or] (C) would cause any Party to breach any material representation, warranty or covenant under this Agreement and the Exhibits hereto…

18.     The P-Tech Merger Agreement provides that the term "Material Adverse Effect" means, among other things:

a material adverse effect on (i) the assets, liabilities, results of operations or condition (financial or otherwise) or prospects of the Company Business of the Company, or (ii) the ability of the Company to perform their material obligations hereunder or to consummate the transactions contemplated hereby…

*See* ECF No. 1-2 at 9.

**THE PHMD PARTIES CANNOT FULFILL THEIR OBLIGATIONS TO CLOSE UNDER THE MERGER AGREEMENTS BECAUSE PHMD AND RADIANCY ADMIT FACING POTENTIAL LEGAL LIABILITY IN EXCESS OF $5 MILLION**

19.     On or about July 16, 2015, a putative class action lawsuit captioned *Mouzon et al. v. Radiancy, Inc. et al.*, was filed against Radiancy and Dolev Rafaeli as Case No. 1:15-cv-01142-CKK in the United States District Court for the District of Columbia (the "Mouzon Class Action").

20.     The complaint filed by the plaintiff in the Mouzon Class Action alleges generally that Radiancy falsely advertised that its no!no! hair removal device is as effective as laser hair

removal to permanently remove hair when, in fact, it is actually no more effective than an inexpensive drugstore razor.

21.    The complaint in the Mouzon Class Action levels 13 counts against Radiancy for violation of the Magnusson-Moss Warranty Act, the breach of implied warranty of merchantability, breach of express warranty, and violation of the consumer fraud statutes of Florida, Virginia, Colorado, Maryland, Pennsylvania, the District of Columbia, Illinois, and California (as well as California's unfair competition and false advertising statutes).

22.    In a SEC form 10-Q dated May 13, 2016, PHMD represented that "the amount of any loss, or range of loss, cannot be reasonably estimated" for the Mouzon Class Action.

23.    A true and accurate copy of PHMD's May 13, 2016 SEC form 10-Q is attached hereto as Exhibit C.

24.    The Mouzon Class Action remains pending as of July 31, 2016.

25.    On or about October 29, 2015, a putative class action lawsuit filed against Radiancy and PHMD and captioned *Cantley v. Radiancy, Inc. et al.* was removed from California state court to the United States District Court for the Eastern District of California, where it is currently pending as Case No. 1:15-cv-01649 (the "Cantley Class Action").

26.    The complaint filed by the plaintiff in the Cantley Class Action alleges generally that Radiancy falsely advertised its no!no! hair removal device to consumers as, *inter alia*, "painless" and "laser-like."

27.    The complaint in the Cantley Class Action includes claims against Radiancy and PHMD for violation of California's state false advertising and consumer fraud statutes.

28.    In an Opposition to Plaintiff April Cantley's Motion to Remand Action to Superior Court and Request for Just Costs and Actual Expenses (the "Opposition to the Motion

to Remand"), filed in the Cantley Class Action on or about December 9, 2015, PHMD and Radiancy represented to the district court that they "determined the amount in controversy exceeded five-million dollars pursuant to [PHMD and Radiancy's] own investigation."

29.     A true and accurate copy of the Opposition to the Motion to Remand filed by PHMD and Radiancy in the Cantley Class Action is attached hereto as Exhibit D.

30.     In a SEC form 10-Q dated May 13, 2016, PHMD represented that "the amount of any loss, or range of loss, cannot be reasonably estimated" for the Cantley Class Action.  *See* Exhibit C.

31.     As a condition precedent to closing, Section 2.12(h) of the Radiancy Merger Agreement requires that neither PHMD nor Radiancy be the subject of "any legal proceedings … that …(B) could reasonably be expected to have a Material Adverse Effect."

32.     The Cantley Class Action is a legal proceeding that "could reasonably be expected to have a Material Adverse Effect," as that term is defined in the Radiancy Merger Agreement.

33.     Representations made by PHMD and Radiancy in documents filed with the SEC and the United States District Court for the Eastern District of California confirm that the Cantley Class Action is a legal proceeding that "could reasonably be expected to have a Material Adverse Effect," as that term is defined in the Radiancy Merger Agreement.

34.     On the May 31, 2016 deadline for closing set forth in the Radiancy Merger Agreement, PHMD and Radiancy were parties to the Cantley Class Action.

35.     PHMD and Radiancy remain parties to the Cantley Class Action as of July 31, 2016.

36.     The Mouzon Class Action is a legal proceeding that "could reasonably be expected to have a Material Adverse Effect," as that term is defined in the Radiancy Merger Agreement.

37.     Representations made by PHMD and Radiancy in documents filed with the SEC confirm that the Mouzon Class Action is a legal proceeding that "could reasonably be expected to have a Material Adverse Effect," as that term is defined in the Radiancy Merger Agreement.

38.     On the May 31, 2016 deadline for closing set forth in the Radiancy Merger Agreement, Radiancy was a party to the Mouzon Class Action.

39.     Radiancy remains a party to the Mouzon Class Action as of July 31, 2016.

40.     Accordingly, by their own statements and contrary to their representations in the Radiancy Merger Agreement, PHMD and Radiancy could not meet the conditions to close established by the Radiancy Merger Agreement.  *See* ECF No. 1-1 at § 2.12(h).

41.     As a condition precedent to closing, Section 2.12(h) of the P-Tech Merger Agreement requires that neither PHMD nor Radiancy be the subject of "any legal proceedings … that …(B) could reasonably be expected to have a Material Adverse Effect."

42.     The Cantley Class Action is a legal proceeding that "could reasonably be expected to have a Material Adverse Effect," as that term is defined in the P-Tech Merger Agreement.

43.     Representations made by PHMD and Radiancy in documents filed with the SEC and the United States District Court for the Eastern District of California confirm that the Cantley Class Action is a legal proceeding that "could reasonably be expected to have a Material Adverse Effect," as that term is defined in the P-Tech Merger Agreement.

44.     On the May 31, 2016 deadline for closing set forth in the P-Tech Merger Agreement, PHMD and Radiancy were parties to the Cantley Class Action.

45.     PHMD and Radiancy remain parties to the Cantley Class Action as of July 31, 2016.

46.     The Mouzon Class Action is a legal proceeding that "could reasonably be expected to have a Material Adverse Effect," as that term is defined in the P-Tech Merger Agreement.

47.     Representations made by PHMD and Radiancy in documents filed with the SEC confirm that the Mouzon Class Action is a legal proceeding that "could reasonably be expected to have a Material Adverse Effect," as that term is defined in the P-Tech Merger Agreement.

48.     On the May 31, 2016 deadline for closing set forth in the P-Tech Merger Agreement, Radiancy was a party to the Mouzon Class Action.

49.     Radiancy remains a party to the Mouzon Class Action as of July 31, 2016.

50.     Accordingly, by their own statements and contrary to their representations in the P-Tech Merger Agreement, PHMD and P-Tech could not meet the conditions to close established by the P-Tech Merger Agreement.

## THE PHMD PARTIES PURPORT TO TERMINATE THE MERGER AGREEMENTS AFTER DSKX NOTIFIES THE PHMD PARTIES OF THEIR BREACHES AND INABILITY TO MEET THE CONDITIONS TO CLOSING

51.     By letter dated May 25, 2016, counsel to DSKX advised the PHMD Parties of their respective breaches of the Merger Agreements, including the breaches detailed above.

52.     A true and accurate copy of the May 25, 2016 letter notifying the PHMD Parties of their breaches is attached hereto as Exhibit E.

53.     Following receipt of the May 25, 2016 letter identifying their breaches, the PHMD Parties refused to negotiate with DSKX in good faith, and instead demanded that DSKX pay the PHMD Parties a $3 million breakup fee or provide substantial additional consideration to the PHMD Parties to avoid the PHMD Parties' threatened termination of the Merger Agreements.

54.     DSKX refused to pay the PHMD Parties a $3 million breakup fee because the PHMD Parties were not entitled to such payment under the Merger Agreements.

55.     DSKX refused to provide substantial additional consideration the PHMD Parties to avoid the purported termination of the Merger Agreements threatened by the PHDM Parties because DSKX had no obligation to provide additional consideration to the PHMD Parties.

56.     When DSKX refused to pay the $3 million breakup fee to the PHMD Parties or provide them with substantial additional consideration to which they were not entitled, the PHMD Parties purported to terminate the Merger Agreements by letter dated May 27, 2016.

<u>COUNT I: BREACH OF CONTRACT</u>
*(Against PHMD and Radiancy)*

57.     DSKX incorporates by reference paragraphs 1 through 56 above as though set forth fully herein.

58.     The Radiancy Merger Agreement is an enforceable contract between DSKX, on the one side, and PHMD and Radiancy, on the other side (among other parties).

59.     PHMD and Radiancy materially breached the Radiancy Merger Agreement, including by and through, but not limited to, the following:

      a.     PHMD and Radiancy cannot satisfy the condition set forth in Section 2.12(h) of the Agreements, which requires that PHMD and Radiancy not be the subject of

"any legal proceedings … that …(B) could reasonably be expected to have a Material Adverse Effect."

b.  PHMD breached its obligations under Sections 5.3 ("Further Assurances") and 5.11(c) ("Access to Information. Confidentiality") of the Radiancy Merger Agreement by providing false information in response to reasonable requests from DSKX and/or by failing or refusing to provide information in response to reasonable requests from DSKX.

c.  PHMD failed to timely file a proxy statement as required under Section 5.10(a) of the Radiancy Merger Agreement.

60.     The material breaches of the Radiancy Merger Agreement by PHMD and Radiancy were done willfully, intentionally, and knowingly.

61.     As a direct result of PHMD and Radiancy's willful, intentional and knowing material breaches of the Radiancy Merger Agreement, DSKX has suffered damages in excess of $75,000.

## COUNT II: BREACH OF CONTRACT
*(Against PHMD and Radiancy)*

62.     DSKX incorporates by reference paragraphs 1 through 61 above as though set forth fully herein.

63.     The P-Tech Merger Agreement is an enforceable contract between DSKX, on the one side, and PHMD and P-Tech, on the other side (among other parties).

64.     PHMD and P-Tech materially breached the P-Tech Merger Agreement, including by and through, but not limited to, the following:

31

a. PHMD and P-Tech cannot satisfy the condition set forth in Section 2.12(h) of the Agreements, which requires that PHMD and P-Tech not be the subject of "any legal proceedings … that …(B) could reasonably be expected to have a Material Adverse Effect."

b. PHMD breached its obligations under Sections 5.3 ("Further Assurances") and 5.11(c) ("Access to Information. Confidentiality") of the P-Tech Merger Agreement by providing false information in response to reasonable requests from DSKX and/or by failing or refusing to provide information in response to reasonable requests from DSKX.

c. PHMD failed to timely file a proxy statement as required under Section 5.10(a) of the P-Tech Merger Agreement.

65. The material breaches of the P-Tech Merger Agreement by PHMD and P-Tech were done willfully, intentionally, and knowingly.

66. As a direct result of PHMD and P-Tech's willful, intentional and knowing material breaches of the P-Tech Merger Agreement, DSKX has suffered damages in excess of $75,000.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

WHEREFORE the Court should enter judgment in favor of Defendant and Counterclaimant DSKX and against Plaintiff and Counterclaim-Defendants PHMD, Radiancy and P-Tech, and enter an order awarding DSKX damages in excess of $75,000, pre-judgment interest, post-judgment interest, costs and such other further relief in favor of DSKX as the Court deems proper.

DATED:  August 1, 2016                                    Respectfully submitted,


                                                    /s/ Daniel C. Mazanec
                                                    DANIEL C. MAZANEC
                                                    Daniel.Mazanec@gmlaw.com
                                                    WENDY MICHAEL
                                                    Wendy.Michael@gmlaw.com
                                                    ERIK BERGLUND
                                                    Erik.Berglund@gmlaw.com
                                                    GREENSPOON MARDER, P.A. P.C.
                                                    1270 Avenue of the Americas
                                                    16th Floor
                                                    New York, New York 10020
                                                    (212) 524-5000

                                                    *Attorneys for Defendant*
                                                    *DS Healthcare Group, Inc.*



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 1, 2016, a copy of the foregoing Answer, Affirmative Defenses, and Counterclaim to Plaintiff's Complaint was filed with the Clerk of the Court using this Court's CM/ECF filing system.